UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIZABETH ANDREWS,<br><br>     Plaintiff,<br><br> v.<br><br>YAKIMA SCHOOL DISTRICT<br>NO. 7,<br><br>     Defendant. | NO. 1:19-CV-3026-TOR<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 17, 18). This matter was heard with oral argument on February 5, 2020. Andrew L. Magee appeared on behalf of Plaintiff. Jerry J. Moberg appeared on behalf of Defendant. The Court has reviewed the record and files herein and considered the parties' oral arguments, and is fully informed.[1] For

---

[1] LCivR 56(c)(1)(B) requires parties filing an opposition to a motion for summary judgment to separately file a "Statement of Disputed Material Facts," set

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

the reasons discussed below, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED.

## BACKGROUND

This case arises out of Plaintiff's inability to begin working as a teacher for Defendant when Plaintiff declined to timely submit to a preemployment urine drug screen and fingerprinting. On January 23, 2017, Plaintiff commenced this lawsuit in King County Superior Court. ECF No. 1-1 at 4-10. A state court judge granted Defendant's motion for change of venue from King County to Yakima County. ECF No. 1 at 2. On February 1, 2019, Plaintiff filed an Amended Complaint in Yakima County Superior Court. ECF No. 15-1 at 2-9. On February 14, 2019, Defendant removed this case to federal court. ECF No. 1 at 1-4.

_____

forth in serial fashion and referencing the moving party's asserted numbered fact. Neither party's responsive Statement of Disputed Material Facts was timely filed, and Plaintiff's responsive facts do not reference Defendant's asserted numbered facts. LCivR 56(c)(1)(C) also requires the moving party who files a reply memorandum to separately file a "Reply Statement of Material Facts Not in Dispute." Although both parties filed reply memoranda, neither party filed a Reply Statement of Material Facts Not in Dispute.

*1. Undisputed Facts*

Both parties move for summary judgment on all claims. ECF Nos. 17, 18. The following facts are not in dispute. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

Plaintiff is a certified teacher in the State of Washington. ECF No. 17-1 at 1, ¶ 1. In June 2016, Defendant posted an announcement for a position teaching high school English at Davis High School ("Davis"). ECF No. 19 at 2, ¶ 2. On July 21, 2016, Plaintiff interviewed for the teaching position at Davis. *Id.* at ¶ 3. Davis' assistant principal, Cathy Gonzalez, later contacted Plaintiff by telephone to inform Plaintiff that she was hired and that Plaintiff should contact Nick Tobia of Human Resources for more information. ECF No. 19 at 14, ¶¶ 50-51. Mr. Tobia sent Plaintiff an "Intent to Hire" form along with other instructions. ECF No. 19 at 14, ¶ 51.

On August 1, 2016, Beth Simmons, an application specialist in Defendant's Human Resources Department, noticed Plaintiff had not provided her criminal conviction history record and her pre-employment drug testing and contacted Plaintiff to inquire about the status of these items. ECF No. 19 at 6, ¶¶ 14-15.

Plaintiff informed Ms. Simmons that she had not provided those items to Defendant.  ECF No. 19 at 6, ¶ 15.

On August 3, 2016, Plaintiff signed a document titled "Intent to Hire Certificated Personnel."  ECF No. 19 at 3, ¶ 4.  This document stated in relevant part:

> It is the Intent of the Yakima School District to hire <u>ELIZABETH ANDREWS</u> as a <u>TEACHER</u> starting the 2016-17 school year.  The offer shall be valid under the following conditions:
> …
> 5.  Successful completion of background check requirement.
> 6.  Employment with the District shall be conditional upon the district's receipt of a criminal conviction history record that is clear of any convictions, adjudications, protective orders, final decisions, or criminal charges in accordance with Washington State law …
> 7.  Approval of Yakima School District Board of Directors.
> …
> All hiring is complete only after final action of the Board of Directors …

ECF No. 19-1 at 8.

Also on August 3, 2016, Plaintiff signed a document titled "Certificated Employee Contract – Provisional Year 1."  ECF No. 19 at 3, ¶ 5.  This document, dated July 29, 2016, stated in relevant part:

> This contract is made by and between the Board of Directors of Yakima School District Number 7, Yakima County, Washington (DISTRICT) and Elizabeth Andrews (EMPLOYEE).  EMPLOYEE is hereby employed by the DISTRICT to perform assigned teaching services as a Teacher at an annual FTE of 1.0 during the 2016-17 bargained school year…
> This contract does not become effective and is void unless:

(a) EMPLOYEE registers, prior to the first work day, with the Human Resources Department, a valid state certificate for the position and the school year covered by this agreement, and

(b) EMPLOYEE signs and returns this contract to the District Human Resources Department on or before August 4, 2016, and

(c) The BOARD approves the employment for the school year covered by the agreement.

If EMPLOYEE is new to the District, this contract is subject to the acceptable outcome of the criminal history records review of Employee.

ECF No. 19-1 at 10.

On August 9, 2016, Plaintiff traveled to Defendant's offices and met with Mr. Tobia to receive instructions and sign paperwork. ECF No. 19 at 14, ¶ 52. On that same date, Plaintiff signed a document titled "Acknowledgement and Understanding of Drug Screen and/or Physical Process." ECF No. 19 at 3, ¶ 6. This document stated in relevant part:

**I understand the directions associated with drug and physical screening:**
1. I understand I am to report to **<u>Yakima Worker Care within 24 hours</u>** of the date and time listed below.
2. I understand that if I **<u>do not report</u>** to Yakima Worker Care within the 24-hour time period any offer of employment with the Yakima School District **will be voided**.
3. …
4. ***Prior*** to beginning employment with the district, **all** newly hired staff and substitutes will be required to obtain **drug screening at their own expense.** The current estimated cost is $36.

ECF No. 19-1 at 12.

After meeting with Mr. Tobia, Plaintiff traveled to the Yakima Education Association ("YEA") office and spoke to Steve McKenna, the YEA president.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1   ECF No. 19 at 15-16, ¶ 59.  Plaintiff told Mr. McKenna that she had not known

2   about the test prior to meeting with Mr. Tobia and that she had several questions

3   she wanted answered before submitting to the test.  *Id.*  Mr. McKenna advised

4   Plaintiff to wait to take the drug test until he could get more information.  *Id.*

5   Plaintiff opposed the drug testing because she believed it was illegal.  ECF No. 19

6   at 23, ¶ 110.

7       On August 16, 2016, the school board consent agenda listed an "action item"

8   of the hiring of new teachers, including Plaintiff, who was listed as a teacher at

9   Davis with employment to begin on August 31, 2016.  ECF No. 19 at 4, ¶ 8.  On

10  that same day, the school board approved the consent agenda as submitted.  ECF

11  No. 19 at 4, ¶ 9.

12      On August 18, 2016, Plaintiff called the Yakima Educational Service

13  District to make arrangements for fingerprinting but was told that appointments

14  were not available on the dates she requested.  ECF No. 19 at 14-15, ¶¶ 54-55.  On

15  August 22, 2016, Plaintiff emailed the Renton Educational Service District to

16  inquire into fingerprinting appointments but was told that the earliest available

17  appointment would be August 31, 2016.  ECF No. 19 at 15, ¶ 56.  Plaintiff opted

18  not to be fingerprinted in Renton because August 31, 2016 was the first day of

19  school and that appointment would be too late.  *Id.* at ¶ 57.  Instead, Plaintiff opted

20

to travel to Olympia and get fingerprinted by the Washington State Patrol, which did not require a prior appointment. *Id.*

On August 26, 2016, Defendant became aware that Plaintiff had not completed her fingerprinting or undergone a drug screening. ECF No. 19 at 4-5, ¶ 10. Upon learning this, Superintendent Irion concluded it was necessary to rescind Plaintiff's teaching contract because teacher training would commence on August 29, 2016, the first day of school would commence on August 31, 2016, and Defendant would need to find another teacher to teach the classes Plaintiff would have taught. *Id.* Dr. Irion instructed Chantel Heffington, an administrative assistant in Defendant's Human Resources Department, to call Plaintiff and advise Plaintiff that her teaching contract was being rescinded. *Id.* Ms. Heffington called Plaintiff and relayed the message that Plaintiff's teaching contract was being rescinded due to Plaintiff's failure to provide her criminal history record and pre-employment drug testing. ECF No. 19 at 6, ¶ 13. At the time of Ms. Heffington's phone call, Plaintiff was in Olympia and was en route to be fingerprinted by the Washington State Patrol. ECF No. 19 at 16, ¶¶ 62-63. After Ms. Heffington's phone call, Plaintiff received an email from YEA president Mr. McKenna advising her to take the drug test. ECF No. 19 at 22, ¶¶ 101-102.

On August 29, 2016, Plaintiff traveled to Defendant's office. ECF No. 19 at 5, ¶ 11. Plaintiff intended to obtain paperwork so that she could submit to a urine

drug screening at that time.  ECF No. 19 at 17, ¶ 66.  While at Defendant's office,

Ms. Heffington delivered a letter from Dr. Irion to Plaintiff.  ECF No. 19 at 5, ¶ 11;

ECF No. 19 at 17, ¶ 68.  The letter stated in relevant part:

> As written in the offer of intent to employ letter with the Yakima School District, the offer of employment was contingent upon you meeting some additional requirements.  Per your phone conversation with Mrs. Heffington on August 26, 2016, she informed you that some of the contingencies were, unfortunately, not met.  As a result, the offer of intent to employ is rescinded and the contract is null and void.

ECF No. 19-1 at 14.

### 2. *Judicial Admissions*

Plaintiff asserts throughout her briefing that the parties are bound by certain "judicial admissions" made during proceedings before this case was removed to federal court.  Specifically, through conclusory assertions of law, Plaintiff seeks to establish certain factual statements made by Defendant's counsel during state court proceedings as stipulated facts in the current proceedings.  *See, e.g.*, ECF No. 17 at 4, 11.  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citation omitted).  "[S]tatements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court."  *Id.* at 227 (emphasis in original).

1    Here, Plaintiff cites repeatedly to a transcript of proceedings in state court,

2    specifically portions of Defendant's counsel's colloquy with the state court judge

3    during a hearing on summary judgment on a claim raised in a prior version of the

4    Complaint. ECF No. 17-1 at 19-63; *see, e.g.*, ECF No. 21 at 10-11. While this

5    Court has the transcript of the state court proceedings, it lacks additional context

6    for this hearing. The hearing concerned a motion for summary judgment, but this

7    Court does not have access to the parties' briefing or the record before the state

8    court judge at the time of the hearing. Accordingly, this Court cannot determine

9    whether statements during the state court hearing are based on a record similar to

10   the one presently before this Court. Importantly, the state court judge noted on the

11   record that the contract condition requiring Plaintiff to submit to a background

12   check was not sufficiently developed during that hearing. ECF No. 17-1 at 28.

13   However, the background check requirement was briefed and extensively argued

14   during the hearing before this Court, and this Court finds it to be a dispositive

15   issue.[2] For these reasons, the Court does not exercise its discretion to construe

16   factual statements made in the prior proceeding as judicial admissions.

17

18

_____

19   [2]    To the extent that the law of the case doctrine binds this Court to findings

20   made in state court prior to removal, this difference in evidence and argument

**DISCUSSION**

**A. Summary Judgment**

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.  Further, a material fact is "genuine" only where the evidence is such that a reasonable jury

_____

presented justifies departure from that doctrine.  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

1  could find in favor of the non-moving party.  *Id.*  The Court views the facts, and all

2  rational inferences therefrom, in the light most favorable to the non-moving party.

3  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted

4  "against a party who fails to make a showing sufficient to establish the existence of

5  an element essential to that party's case, and on which that party will bear the

6  burden of proof at trial."  *Celotex*, 477 U.S. at 322.

7  **B. Claim One: Wrongful Discharge in Violation of Public Policy and**

8  **Wrongful Retaliation**

9  Plaintiff moves for summary judgment on her tort claim for wrongful

10  discharge in violation of public policy and wrongful retaliation.  ECF No. 17 at 5-

11  12.  Defendant moves for summary judgment on the grounds that pre-employment

12  drug screening does not violate public policy, or, alternatively, that Plaintiff's

13  failure to timely complete her fingerprinting provided "overriding justification" to

14  rescind the teaching contract.  ECF No. 18 at 4-10.

15  *1. Ambiguous Pleading*

16  The Court notes as an initial matter that Defendant implies Plaintiff appears

17  to plead two distinct causes of action, wrongful discharge and wrongful retaliation,

18  as a single cause of action.  ECF No. 15-1 at 5; *see* ECF No. 20 at 7-8.  Wrongful

19  discharge in violation of public policy is a tort under Washington law that has been

20  developed over time through case law.  *See Rickman v. Premera Blue Cross*, 358

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

P.3d 1153, 1157-58 (Wash. 2015).  On the other hand, retaliation is a cause of action recognized under the Washington Law Against Discrimination (WLAD). *See Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018).

Plaintiff's Amended Complaint is pled in such an ambiguous manner that it is difficult to discern which claim Plaintiff intends to assert.  *See* ECF No. 15-1 at 5, ¶ 17.  In support of her first claim for relief, Plaintiff alleges only that Defendant unlawfully retaliated against her.  *Id.*  However, the heading of Plaintiff's first claim alleges wrongful discharge in violation of public policy.  *Id.*  Additionally, Plaintiff's motion for summary judgment only discusses the substance of the wrongful discharge claim.  ECF No. 17 at 5-12.  Some of this confusion may stem from older wrongful discharge case law, which describes the "first step" of a wrongful discharge in violation of public policy claim as requiring the plaintiff to "make out a prima facie case for retaliatory discharge."  *Wilmot v. Kaiser Aluminum and Chem. Corp.*, 821 P.2d 18, 29 (Wash. 1991).  Subsequent case law has clarified the elements of a wrongful discharge in violation of public policy tort claim without relying on the term "retaliatory discharge."  *Martin v. Gonzaga Univ.*, 425 P.3d 837, 844 (Wash. 2018).  Plaintiff's Amended Complaint does not clearly discuss retaliation as the first step in a burden-shifting analysis applicable to a wrongful discharge in violation of public policy claim.  ECF No. 15 at 5, ¶ 17.

Defendant argues that to the extent Plaintiff has attempted to assert a WLAD retaliation claim, such claim should be dismissed. ECF No. 20 at 7-8. Plaintiff's response failed to address Defendant's WLAD retaliation arguments. ECF No. 24 at 1-9. In this overall context, the Court finds that Plaintiff's Amended Complaint intended to assert a claim for relief for wrongful discharge in violation of public policy, and therefore addresses only this claim in consideration of the parties' cross-motions for summary judgment.

2. *Wrongful Discharge in Violation of Public Policy*

Plaintiff asserts that she was discharged from a teaching position for failing to submit to a preemployment urine drug screen constitutes discharge in violation of her state constitutional right to privacy. ECF No. 17 at 5-10. This tort is narrowly construed and is generally applied to only four scenarios: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing." *Rose v. Anderson Hay and Grain Co.*, 358 P.3d 1139, 1142-43 (Wash. 2015); *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749 (Wash. 2015) (citing *Gardner v. Loomis Armored, Inc.*, 913 P.2d 377, 379 (Wash. 1996). When a wrongful discharge claim does not

clearly fit into one of these categories, the court must instead consider the following "Perritt framework" to determine whether the claimant was wrongfully discharged in violation of public policy: (1) the existence of a clear public policy; (2) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy; (3) that the public policy-linked conduct caused the dismissal; and (4) that the defendant has not offered an overriding justification for the dismissal of the plaintiff. *Gardner*, 913 P.2d at 382. Plaintiff argues that this case falls within the third defined category of tort claims, for cases where the employee is fired for exercising a legal right. ECF No. 17 at 10.

As an initial matter, at oral argument, the parties disputed whether Plaintiff ever became employed by Defendant, and therefore whether Plaintiff could recover under a tort theory for wrongful discharge from employment. During the hearing, Defendant argued that, regardless of the preemployment drug screen issue, Defendant's offer of employment required Plaintiff to submit a criminal history check, which created a valid condition precedent to any employment contract between the parties. Because Plaintiff did not timely complete fingerprinting for the background check, Defendant contends that Plaintiff never satisfied the condition precedent and therefore never became Defendant's employee.

Plaintiff countered that Defendant did not have authority to require Plaintiff to submit to a new background check because state law prohibits Defendant from

requiring Plaintiff to submit to any additional background check beyond the process required to obtain and recertify a teaching license in Washington State. Plaintiff identified RCW 28A.410.070, governing the registration of teaching certificates in Washington, as legal authority that entitles Plaintiff to employment with Defendant because Plaintiff held a teaching certificate during the events at issue in this case. ECF No. 17 at 10-11. Plaintiff asserted that because state law requires teachers to submit to a background check every five years in order to maintain their teaching certificate, this requirement establishes a ceiling on what background checks can be required of teachers, so therefore individual school districts cannot require background checks beyond those required to maintain a teaching certificate.

Plaintiff's position is plainly inconsistent with state law. Indeed, a separate statute requires Washington school districts to conduct a record check, including a fingerprint check, for all new employees who will have regularly scheduled unsupervised access to children. RCW 28A.400.303; *see also Richland Sch. Dist. v. Mabton Sch. Dist.*, 45 P.3d 580, 588-89 (Wash. App. 2002) (statute places affirmative duty on the hiring school district to screen potential employees for any criminal record). Contrary to Plaintiff's argument, Defendant's requirement that Plaintiff submit to a fingerprint background check was not only authorized but *required* by state law. Thus, the contract clause that made Plaintiff's employment

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

"subject to" a criminal record check was legitimately the subject of a condition precedent to the contract.

In determining whether Plaintiff ever became employed by Defendant, the parties dispute which documents make up the ultimate contract terms between the parties. Plaintiff contends that the "Certificated Employee Contract" constituted the employment contract between the parties. ECF No. 17-1 at 2, ¶¶ 2-4. Construing the facts in the light most favorable to Plaintiff, that this document was the complete contract and became "effective" when the school board voted to approve Plaintiff's employment, there remains no dispute that this document contains the language "If EMPLOYEE is new to the District, this contract is subject to the acceptable outcome of the criminal history records review of Employee." ECF No. 19-1 at 10. The language "this contract is subject to" creates a clear condition precedent. Additionally, there is no dispute that at the time Defendant rescinded its offer of employment, Plaintiff had not completed the fingerprint background check. *See* ECF No. 19 at 6, ¶ 13; 16, ¶¶ 62-63. Even if the school board voted to approve Plaintiff as a new teacher, the language of her teaching contract still made her employment subject to a background check. Because the background check was a valid condition precedent to Plaintiff's employment contract becoming effective, and because Plaintiff never completed that condition precedent, Plaintiff's employment contract never became effective

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

and Plaintiff was never employed by Defendant.  Plaintiff cannot make a claim for wrongful discharge from employment she never secured.  Defendant is entitled to judgment as a matter of law on this claim.

## C.  Claim Two: Breach of Contract

Plaintiff and Defendant each move for summary judgment on Plaintiff's breach of contract claim.  ECF No. 17 at 12-13; ECF No. 18 at 11-14.

A claim for breach of contract is actionable under Washington law "if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant."  *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 10 (Wash. App. 1995) (citation omitted).  Conditions precedent to a contract are "those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before … the usual judicial remedies are available."  *Ross v. Harding*, 391 P.2d 526, 530 (Wash. 1964) (citing 3A Corbin on Contracts § 628).  "A plaintiff, in order to maintain an action on the contract, must have complied with the conditions precedent contained therein."  *Ross*, 391 P.2d at 533.

Here, as discussed *supra*, it is undisputed that the language of the "Certificated Employee Contract" states that Plaintiff's employment with the District was "subject to the acceptable outcome of the criminal history records review of Employee."  ECF No. 19-1 at 10.  Additionally, there is no dispute that

at the time Defendant rescinded its offer of employment, Plaintiff had not completed the fingerprint background check.  *See* ECF No. 19 at 6, ¶ 13; 16, ¶¶ 62-63.  Because Plaintiff did not satisfy this condition precedent to her employment contract with Defendant becoming effective, Plaintiff cannot now maintain a breach of contract claim against Defendant.  *Ross*, 391 P.2d at 533.  Defendant is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

### D.  Claim Three: Violation of Procedural Due Process

Plaintiff and Defendant each move for summary judgment on Plaintiff's § 1983 claim for violations of both state and federal procedural due process protections.  ECF No. 17 at 14-20; ECF No. 18 at 14-20.

Section 1983 requires a claimant to prove (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

*1. State Due Process Claim*

Plaintiff first moves for summary judgment on her § 1983 claim that Defendant violated her state due process rights by failing to comply with a state statute that governs the procedure for terminating teaching contracts. ECF No. 17 at 16-19. Defendant moves for summary judgment on the ground that § 1983 may only be used to vindicate rights protected under federal law, not state law. ECF No. 20 at 10-11.

"Section 1983 requires [a plaintiff] to demonstrate a violation of federal law, not state law." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007). "[W]hen a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action." *Lovell By and Through Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996). However, "[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Id.*

Here, Plaintiff asserts a § 1983 claim for violations of RCW 28A.405.300, which provides certain procedural protections for teachers facing adverse changes in their contract status. ECF No. 17 at 16-19. Section 1983 is not the appropriate vehicle through which to challenge Defendant's compliance with state law procedural protections. *Galen*, 477 F.3d at 662. Whether Defendant's actions

violated Plaintiff's due process rights as guaranteed under federal law is a separate analysis, which this Court addresses below. *Lovell*, 90 F.3d at 370; *see also Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017) (school district's failure to comply with state procedural protection for teachers did not resolve the question of whether the teacher's federal due process rights were violated). Plaintiff's due process claim for alleged violations of additional due process protections provided by state statute is not properly asserted under Section 1983. Defendant is entitled to judgment as a matter of law on this issue.

### 2. *Federal Due Process Claim*

Plaintiff separately asserts a § 1983 claim that Defendant's actions violated her Fourteenth Amendment right to procedural due process. ECF No. 17 at 14-16. Defendant argues that Plaintiff cannot assert a procedural due process claim because Plaintiff did not acquire a property interest in the teaching position or, in the alternative, Plaintiff had access to an adequate post-deprivation remedy. ECF No. 18 at 14-20.

The Fourteenth Amendment protects against deprivation of life, liberty, or property without due process of law. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Courts analyze procedural due process claims in two steps. First, the court asks whether there was deprivation of a constitutionally protected liberty or property interest. *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). If the

court finds a protected interest, it proceeds to step two to determine if there was a denial of adequate procedural protections. *Id.*

a. *Property Interest*

The Fourteenth Amendment protects the property interest an individual "has already acquired." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). In order to assert a property interest for a procedural due process claim, a person must "have a legitimate claim of entitlement" to the protected interest. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law…." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985). A statute that requires an employer to provide a specified reason for an adverse employment action creates a protected property interest for the employee. *Sanchez v. City of Santa Ana*, 915 F.2d 424, 428-29 (9th Cir. 1990); *see also Roybal*, 871 F.3d at 931-32 (Washington statute requiring adverse change in school principal contract status to be supported by probable cause gave rise to constitutionally protected property interest).

Here, Plaintiff notes that RCW 28A.405.300 requires that any adverse change in a teacher's contract status must be made upon notice of probable cause for the adverse action. ECF No. 17 at 16-19. As with the protections for principals

at issue in *Roybal*, this statute requiring a statement of probable cause before taking an adverse contract action against a teacher creates a legally protected property interest. *Roybal*, 871 F.3d at 931-32. However, as discussed *supra*, Plaintiff never satisfied the background check condition precedent to her employment contract with Defendant. Because Plaintiff's employment contract with Defendant never became enforceable, Plaintiff did not become employed by Defendant and therefore never acquired a property interest in the teaching position at issue. Because Plaintiff cannot demonstrate that she had a property interest in the teaching position, Defendant is entitled to judgment as a matter of law on Plaintiff's § 1983 due process claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

      1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED.

      2. Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED.

      The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and CLOSE the file.

      **DATED** February 7, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 22